474 So.2d 886 (1985)
Charles GLOVER, Appellant,
v.
STATE of Florida, Appellee.
No. AW-173.
District Court of Appeal of Florida, First District.
August 28, 1985.
*888 Michael E. Allen, Public Defender and Terry Carley, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Wallace Allbritton, David P. Gauldin, Asst. Attys. Gen., Tallahassee, for appellee.
BARFIELD, Judge.
Charles Glover appeals a life sentence imposed by the trial court in a departure from the recommended guidelines sentence. Appellant contends the trial court erred (I) in failing to inform him fully of the possible sentence he could receive under the guidelines, (II) in failing to provide clear and convincing reasons for departing from the sentencing guidelines, and (III) in failing to provide a written statement of the reasons for departure from the sentencing guidelines. We reverse and remand for resentencing on points two and three, but also deem appropriate some discussion of appellant's first point.
Appellant was charged by information with armed robbery of a Winn-Dixie grocery store in Panama City, Florida. Appellant initially entered a plea of not guilty. Eventually, after filing motions for continuance and waiving his right to speedy trial, appellant entered a guilty plea. The Waiver and Plea form executed by appellant indicates that appellant understood that "the maximum penalty could be Life" if he was "not sentenced under the Sentencing Guidelines eff. 10-1-83."[1] Paragraph six of the Waiver and Plea form set out the following plea bargain provisions:
6. No person, officer, agent or any official of any branch of Government nor my attorney, has made any promise or suggestion of any kind to me, or anyone else to my knowledge, that if I would plead guilty to these charges that I would receive a light sentence, probation or other form of leniency, except as set forth below in the following plea bargain agreement: No retention of jurisdiction by Court; No enhancement of penalty pursuant to Habitual offender; option to be Sentenced under Guidelines.
Appellant later executed a form entitled "Election to Be Sentenced Under Florida Sentencing Guidelines." Appellant's score sheet reflects a total of 180 points, with a recommended sentence range of seven to nine years. The trial court sentenced appellant to imprisonment for natural life, with credit for 412 days jail time. As grounds for sentencing in excess of the recommended guidelines sentence, the trial court stated orally:
Mr. Glover, I've gone outside the guidelines for the following reasons; Less than a month before you had been involved in the same activity in Leon County. You've already been sentenced for that, I'm aware of that.
You've been given a tremendous break by the plea bargaining arrangement with the state and I think that the facts and circumstances that I mentioned to Mr. Johnson [co-defendant] would apply to you. Not only the danger to yourself and your co-defendant but to the other people in the store when this handgun was used.
It was a huge amount of money taken and there was danger to the manager and the other two employees in that store. It was beyond the run-of-the-mill robbery in my view. For that reason I've gone outside of the guidelines.[2]
*889 Counsel for appellant objected to the court's departure from the guidelines, pointing out to the court that prior convictions had already been factored into the score total, that no physical injuries were inflicted during the robbery, and that all of the money taken in the robbery had been recovered.

ISSUE I
The first issue raised by appellant is the failure of the trial court to inform him of the ramifications of entering a guilty plea under the sentencing guidelines. Appellant contends that the trial court should have informed him that his selection of guideline sentencing would render him ineligible for parole, as such ineligibility for parole is a violation of the ex post facto clauses of the federal and Florida constitutions when applied to persons whose offenses were committed prior to the effective date of the guidelines. Appellant has cried "foul" because his life sentence means he will spend the rest of his natural life in prison, while if he had parole eligibility he might get out of prison at some date in the future. This sounds as if there may have been a basis for raising a question of denial of equal protection of the laws, an issue not raised by the parties to this appeal. We find appellant's "ex post facto" argument, however, to be without merit.
The term "ex post facto" literally translates as "after the fact." Black's Law Dictionary. Whether a law is "ex post facto" with respect to the commission of a specific offense depends upon when the law was passed. If passed after the commission of the offense, it is as to that offense "ex post facto," but whether it is in the class of "ex post facto" laws forbidden by the Constitution may depend on other matters. Kring v. State of Missouri, 107 U.S. 17 [Otto] 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883). The classic definition of an "ex post facto" law prohibited by the United States Constitution appears in Calder v. Bull, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798):
1st. Every law that makes an action done before the passing of the law; and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.
Although there seems to be some debate among legal historians regarding the question whether "ex post facto" was intended by the founding fathers to encompass all retrospective legislation, both civil and criminal, Justice Chase's opinion in Calder v. Bull established that the "ex post facto" prohibition was inserted to prevent the federal and state legislatures from passing certain types of retrospective criminal laws only. Justice Chase appears to have been of the opinion that such laws were inherently prohibited, even if they had not been expressly restrained by the provisions of the Constitution. Justice Paterson agreed that the words "ex post facto" have a technical meaning when applied to a law and, in legal phraseology, refer to crimes, pains and penalties. Justice Iredell concurred that the true construction of the prohibition extends to criminal, but not to civil cases because, "It is only in criminal cases, indeed, in which the danger to be guarded against, is greatly to be apprehended." Id. at 399.
By stretching the categories in Calder, the court held in Kring v. State of Missouri, that a change in criminal procedure amounted to an ex post facto law prohibited by the Constitution. The Court concluded that a change in procedure "alter[ing] the situation of a party to his disadvantage" could not be applied to crimes committed prior to the change without violating the ex post facto prohibition. 107 U.S. at 228. In a series of later cases, the Court sustained the application of procedural *890 statutes in trials for crimes allegedly committed before the statutes were enacted.[3] In these cases, the court stated that the defendant had not been deprived of a substantial or vested right, but did not examine the resulting disadvantage to the defendant. In Thompson v. Utah, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), however, the court again applied the prohibition to a procedural change. Thompson's crime was committed while Utah was a territory governed by federal law guaranteeing a trial by a jury of twelve. Before the trial, Utah was admitted to the Union, and Thompson was convicted under state law requiring only eight jurors. In reversing the conviction, Justice Harlan, writing for the Court, was apparently untroubled by the logical implication of the decision, that rights were vested in a defendant upon commission of a wrong. The kind of disadvantage to the defendant that renders a procedural change ex post facto, the Court generalized, is limited to those "materially impair[ing] the right of the accused to have the question of his guilt determined according to the law as it was when the offense was committed." 170 U.S. at 351, 18 S.Ct. at 623.
Later Supreme Court cases apparently ignored Kring and did not construe Thompson as establishing any significant restraint on legislatures. In Beazell v. Ohio, 269 U.S. 167, 171, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925), the Court noted:
Just what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohibition cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree. But the constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation, and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance. (cites omitted)
One writer[4] has delineated four basic problems with retrospective laws, which generally seem to underlie the ex post facto prohibition: (1) that such a law gives no fair warning that the act is prohibited and the extent of the punishment which will be imposed; (2) that such a law frustrates reliance on existing laws; (3) that such a law does not serve the function of criminal laws (to deter crime by the threat of punishment); and (4) that such a law presents a potential for legislative abuse (where the result to be achieved by the legislation is politically motivated). Accordingly, it has been suggested that a court should consider the following factors in deciding whether a law is proscribed by the ex post facto prohibition: first, does the law penalize activities in the absence of fair warning and frustrate reasonable reliance on existing laws; second, can the law serve its ostensible purpose (for instance, does the law attempt to regulate behavior through threats of unpleasant consequences where deterence is no longer possible); and finally, could the law have been a consequence of legislative vindictiveness. Noting that no precise test can be formulated from the factors, the reviewer suggests that in most cases the court must engage in a delicate balancing of governmental interests in legislative and administrative flexibility against the societal interest in having laws that can be relied upon and laws that do not stem from improperly motivated legislative acts.
Traditionally, however, courts have not balanced these interests and have rigidly interpreted the ex post facto prohibition, uniformly invalidating any retroactively applied increase in the punishment that a trial court can impose for an offense. In Lindsey v. Washington, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937), the Court held that a statute making maximum sentences mandatory, while also making parole available, was an increase in punishment in violation of the ex post facto clause. Changes that lessen the punishment for crimes, *891 however, do not violate the clause. In applying the prohibition, the Court has been forced to decide whether hanging is less humane than electrocution, Malloy v. South Carolina, 237 U.S. 180, 35 S.Ct. 507, 59 L.Ed. 905 (1915), and whether extending the time before a death sentence can be executed is a mitigation of punishment, Rooney v. North Dakota, 196 U.S. 319, 25 S.Ct. 264, 49 L.Ed. 494 (1905). It has been argued that imprecision in the standards for prescription of punishments results in either "insecurity of the general community" or "injustice to the morally innocent ... deprived of knowledge of how they are to act to avoid the threatened sanction of law" in a way that compels precision in standards for substantive crimes.[5] It has been observed, however, that the strictness with which the ex post facto prohibition is applied to punishment increases "does appear anomalous in view of broad judicial discretion in sentencing if the prohibition is aimed at honoring calculations of the defendant."[6]
In Kring the Court noted the liberal construction which it has given to the words "ex post facto law", "a construction in manifest accord with the purpose of the constitutional Convention to protect the individual rights of life and liberty against hostile retrospective legislation." 107 U.S. at 230, 2 S.Ct. at 451. Citing the case of Hartung v. People, 22 N.Y. 95, as an example of this liberality of construction, the court quoted with approval the lower court's observation:
It is highly probable that it was the intention of the Legislature to extend favor rather than increased severity towards the convict and others in her situation; and it is quite likely that, had they been consulted, they would have preferred the application of this law to their cases rather than that which existed when they committed the offenses of which they are convicted. But the case cannot be determined on such considerations. No one can be criminally punished in this country, except according to a law prescribed for his government before the supposed offense was committed, and which existed as a law at that time. It would be useless to speculate upon the question whether this would be so upon the reason of the thing, and according to the spirit of our legal institutions, because the rule exists in the form of an express written precept, the binding force of which no one disputes. No State shall pass any ex post facto law is the mandate of the Constitution of the United States.
107 U.S. at 231, 2 S.Ct. at 451. (emphasis in original). This seems to suggest that defendants cannot choose which version of a criminal law will be applied to their case, but are constitutionally bound by the laws in effect at the time the offense was committed. We reject this suggestion as universally applicable, for the reasons discussed infra.
Article X, Section 9 of the Florida Constitution provides that repeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed. Article III, Section 32 of the 1885 Constitution similarly provided that all criminal legislation be given a prospective effectiveness. Ex parte Browne, 93 Fla. 332, 111 So. 518 (1927). "Criminal statutes" are acts dealing with crime or its punishment. Washington v. Dowling, 92 Fla. 601, 109 So. 588 (1926). Florida courts have apparently made a distinction between statutes affecting substantial rights and statutes affecting procedure, those affecting procedure in some instances being permitted to have retrospective operation. Lee v. State, 128 Fla. 319, 174 So. 589 (1937); Lovett v. State, 14 So. 837 (1894); Mathis v. State, 12 So. 681 (1893); State v. Pizarro, 383 So.2d 762 (Fla. 4th DCA 1980).
In Pizarro, the court held that since the Youthful Offender Act alters the prescribed punishments for those persons *892 meeting its requirements, it cannot apply to offenses committed prior to its effective date, since retroactive application of amended or appealed statutes affecting prosecution or punishment is unconstitutional, and only procedural or remedial statutory changes may be applied to pending criminal cases. In Castle v. State, 330 So.2d 10 (Fla. 1976), the Supreme Court affirmed the district court's holding that the punishments provided by statute at the time of the offense are controlling over different punishments provided by changes in the criminal statute prior to trial and that to the extent section 775.12, Florida Statutes (now repealed) suggested otherwise, it would have been unconstitutional. In Castle, the defendant received a 10 year sentence for conspiracy to commit arson, the maximum statutory penalty at the time the offense was committed; at the time of trial, the maximum sentence had been statutorily reduced to five years. In Hayes v. State, 452 So.2d 656 (Fla. 2d DCA 1984), the court held that retention of jurisdiction does not affect "punishment" or sentence, within the meaning of Article X, Section 9, but rather has an effect which permits the trial judge to control parole review during the terms of the sentence imposed. The court noted, however, that an increase in retention time is a disadvantage which cannot be applied ex post facto.
In Dobbert v. State, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), the Court rejected several claims based on the prohibition against ex post facto laws. At the time Dobbert murdered his daughter, for which he was condemned to death, section 921.141, Florida Statutes, provided that a person convicted of a capital felony was to be punished by death unless the verdict included a recommendation of mercy by a majority of the jury. Subsequent to the murder, but before the trial, this statute was found unconstitutional by the Florida Supreme Court, whereupon the Legislature enacted a new death penalty procedure, amending section 921.141 to provide for a separate sentencing hearing; an advisory sentence by the jury, not binding on the court; specific findings by the trial court in support of the sentence of death; and automatic, priority review by the Florida Supreme Court of the judgment and sentence. Dobbert argued that the change in the role of the judge and jury in the imposition of the death sentence between the time of the murder and the time of the trial constituted an ex post facto violation. The Court concluded that the changes in the law were procedural, and on the whole ameliorative, so that there was no ex post facto violation. The Court held that even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto, and that the new statute "simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime." Id. at 293-94, 97 S.Ct. at 2298-2299. The Court held further that in determining whether the new law was more or less onerous than the prior law, "We must compare the two statutory procedures in toto to determine if the new may be fairly characterized as more onerous." Id. at 294, 97 S.Ct. at 2298. Noting that the new statute afforded significantly more safeguards to the defendant than did the old, the Court held that defendants are not significantly disadvantaged by the fact that under the new statute, the trial court is not bound by the jury's recommendation of life.
In Portley v. Grossman, 444 U.S. 1311, 100 S.Ct. 714, 62 L.Ed.2d 723 (1980), the Court noted its holding in Dobbert that the constitutional prohibition of ex post facto laws does not extend to every change of law that may work to the disadvantage of a defendant, and upheld the application of amended parole guidelines. The Court found that the guidelines "operate only to provide a framework for the Commission's exercise of its statutory discretion," and that the terms of the sentence originally imposed were not altered, finding that the change in guidelines "is in the nature of a procedural change found permissible in Dobbert, supra." Id. at 1312-13, 100 S.Ct. at 714-715.
*893 In Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the Court held that a Florida statute reducing the amount of "gain time" deductible from a convicted prisoner's sentence was unconstitutional as an ex post facto law as applied to a person whose crime was committed before the statute's enactment. The court noted, "two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." Id. at 29, 101 S.Ct. at 964. The state argued that the net effect of all the amended provisions taken together is increased availability for gain time deductions. However, the Court held that none of the provisions for extra gain time compensated for the reduction of gain time available solely for good conduct, so that the new provision "restricts the inmate's opportunity to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment." Id. at 35-36, 101 S.Ct. at 967-968.
Nowhere have we found a challenged statute similar to the one at issue here, which applies to those whose crimes are committed after the statute goes into effect, but which also provides for application to one whose offense was committed prior to the effective date of the statute, "when the defendant affirmatively selects to be sentenced pursuant to the provisions of this act." Section 921.001(4)(a), Florida Statutes (1983). In every case we have read, the defendant has had no choice in the matter of which statutory provision will be applied to his case. However, since the purpose of the "ex post facto" prohibition is "to secure substantial personal rights against arbitrary and oppressive legislation," Beazell v. Ohio, 269 U.S. at 171, 46 S.Ct. at 69, and to prevent the exercise of tyranny under the pretext of penal enactments, Calder v. Bull, 3 U.S. (3 Dall.) at 399, it is hard to grasp how the statute before us can be considered the type of "ex post facto" law prohibited by the Constitution, when by its very terms, it applies only to those whose offenses are committed after it takes effect, unless one whose offense was committed before the effective date affirmatively elects to have the statute apply to his case.
This case is distinguishable from State v. Green, 421 So.2d 508 (Fla. 1982), and State v. Williams, 397 So.2d 663 (Fla. 1981), upon which appellant relies, because in each of those cases, the only choice given the defendant was whether or not to plead guilty. The fact that the judge was entitled to retain jurisdiction for a portion of the sentence was therefore a direct consequence of the guilty plea, of which the defendant should have been made aware. However, in the instant case, the defendant made two separate choices: to plead guilty to the offense, with a possible life sentence, and to have his sentence determined under the sentencing guidelines, rather than under the law as it existed at the time his offense was committed. Section 921.001(8), Florida Statutes (1983), specifically provides that one who is sentenced pursuant to the guidelines shall be released from incarceration only:
(a) Upon expiration of his sentence;
(b) Upon expiration of his sentence as reduced by accumulated gain-time; or
(c) As directed by an executive order granting clemency.
This statute, which was in effect at the time the defendant affirmatively selected guidelines sentencing, provides notice that one of the consequences of his selection will be loss of entitlement to parole. The statute further states that the provisions of chapter 947, Florida Statutes, entitled "Parole and Probation", shall not be applied to one who selects sentencing under the guidelines. The Supreme Court's adoption of the sentencing guidelines, In Re Rule of Criminal Procedure (Sentencing Guidelines), 439 So.2d 848, 849 (Fla. 1983), specifically provides that the guidelines will be effective:
for all applicable offenses committed after 12.01 a.m., October 1, 1983 and, if affirmatively selected by the defendant, *894 to sentences imposed after that date for applicable crimes occurring prior thereto.
(emphasis added)
In our opinion, a constitutionally forbidden ex post facto law is one which imposes upon a defendant liability for an act which was not criminal at the time it occurred, or which imposes a greater punishment than that required at the time the act occurred. The underlying theme of the cases which we have read is the unfairness of imposing retroactive sanctions when, at the time the offense was committed, the defendant had no fair warning of the consequences of his actions. It seems logically inconsistent to classify the optional application of sentencing guidelines, which both advantage and disadvantage the defendant, as the type of "ex post facto" law prohibited by the founding fathers. Nothing has been "imposed" upon this defendant; instead he has been given the choice to have applied to him the sentencing law in effect at the time he committed his offense, or to have his sentence determined under the sentencing guidelines. Because the application of the sentencing guidelines to the defendant in this case becomes a violation of the "ex post facto" provision of the Constitution only if it is imposed upon him (which it has not been), he gives up no constitutional right by choosing guideline sentencing. Therefore, there is no requirement that his choice be accorded the same constitutional safeguards as a guilty plea, so long as his selection of guideline sentencing is affirmatively made (i.e. the guidelines may not be applied to him by default; silence would be taken as not choosing guideline sentencing). As recently noted by the Second District Court of Appeal in Hayward v. State, 467 So.2d 462, 464 (Fla. 2d DCA 1985):
Although departure from a presumptive sentence in the context of a crime committed prior to October 1, 1983 does disadvantage the defendant through loss of the parole privilege, that loss is not occasioned by an independent act of the state which alone exposes the defendant to an otherwise impermissible ex post facto law.
(citations omitted)
The inequities of the law as it now stands,[7] particularly in this case, where an armed robber receives a life sentence without parole, raises the suggestion that the equal protection provisions of the Constitution may have been violated. That is a separate question from the one presented here. The appellant attempts to distinguish Moore v. State, 455 So.2d 535 (Fla. 1st DCA 1984), on the basis of the differences in the sentencing consequences. However, it is hard to see the distinction between this life term without parole and an extended term of years, less gaintime, without parole, since in either case the defendant could be incarcerated for his natural life.

ISSUE II
The second issue raised by appellant is that the trial court failed to provide "clear and convincing reasons" for departing from the recommended guidelines sentencing range. At sentencing, the judge announced four reasons for sentencing outside the guidelines: (1) appellant had been involved in an armed robbery in Leon County less than a month before committing the offense for which he was being sentenced, (2) the plea bargain arrangement with the state gave appellant a "tremendous break," (3) appellant placed the people in the store, his co-defendant, and himself in danger by the use of a handgun in the commission of the robbery, and (4) a huge amount of money was taken. Appellant contends the judge's stated reasons for departure do not constitute clear and convincing reasons for imposing a life sentence rather than the recommended seven to nine years under the guidelines. Appellant argues that the Leon County robbery had already been *895 factored into the score sheet; the judge had agreed to the plea bargain when he accepted the guilty plea; there were no physical injuries resulting from the robbery; and the money taken was all returned.
The Fourth District has collected and categorized by subject matter the recent Florida cases dealing with sentencing guidelines departures. Mischler v. State, 458 So.2d 37 (Fla. 4th DCA 1984). The first, third and fourth reasons given by the trial judge in this case were properly considered in determining whether or not to depart from the guidelines. However, the trial court gave as the second reason for departure the "tremendous break" afforded appellant in the plea bargain. This plea bargain is stated in the "Waiver and Plea" form as:
No retention of jurisdiction by the Court; No enhancement of penalty pursuant to Habitual offender; option to be Sentenced under Guidelines.
The trial court's reliance upon "no retention of jurisdiction by the Court" as grounds for departure from the recommended sentence is misplaced because there is no parole eligibility under the guidelines. Consequently, an agreement not to retain jurisdiction in a no-parole situation is clearly not a "tremendous break." By the same token, the option to choose sentencing under the guidelines is not a "break" granted to appellant by the plea bargain. Rather, this option is a matter of right provided by section 921.001(4)(a), Florida Statutes (1983), which requires that a criminal defendant sentenced after October 1, 1983, if he so elects, must be sentenced in accordance with the guidelines. Knight v. State, 455 So.2d 457 (Fla. 1st DCA 1984); Jackson v. State, 454 So.2d 691 (Fla. 1st DCA 1984).
This apparent misunderstanding by the trial court of the no-parole provision under the guidelines, taken together with the award of "credit" for 412 days jailtime and the court's second reason for departure, casts doubt on whether the sentence actually imposed in this case was in fact a guidelines sentence. We are not convinced the trial court would have arrived at the same sentencing decision after elimination of the impermissible reason for departure and therefore remand to the trial court for reconsideration of the sentence. See Carney v. State, 458 So.2d 13 (Fla. 1st DCA 1984).

ISSUE III
This court in Jackson v. State expressly refused to follow the Fourth District's holding in Harvey v. State, 450 So.2d 926 (Fla. 4th DCA 1984), that "a separate written articulation of reasons for departure from the guidelines is not required" so long as the trial court's oral statement is transcribed for review. The Jackson panel certified conflict, finding that the rule requires a written contemporaneous statement rather than an oral statement to be transcribed later. Accord: Johnson v. State, 462 So.2d 49 (Fla. 1st DCA 1984); Roux v. State, 455 So.2d 495 (Fla. 1st DCA 1984).
We therefore REVERSE and REMAND for resentencing, with the direction that any guidelines sentencing departure must comply with Florida Rule of Criminal Procedure 3.701(d)(11).
WIGGINTON, J., concurs.
JOANOS, J., dissents in part and concurs in part, with written opinion.
JOANOS, Judge, dissenting in part and concurring in part.
I dissent from the majority view that the case need not be reversed on Appellant's first point. I concur in the majority's reversal on the other two points.
Appellant's first point is that the trial court committed error in failing to inform appellant regarding the particulars surrounding a guilty plea under the sentencing guidelines. I believe that there is merit in this argument. Before accepting a guilty plea the trial court must determine that: (1) the plea is voluntary, (2) the defendant understands the nature of the charge and the consequences of the plea, *896 and (3) there is a factual basis for the plea. Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747, 756 (1970); State v. Green, 421 So.2d 508, 509 (Fla. 1982); Williams v. State, 316 So.2d 267 (Fla. 1975); Florida Rules of Criminal Procedure 3.172. A waiver of the constitutional rights which attain to any plea agreement must be made with the full knowledge of the consequences of the plea. Brady v. United States; Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The record in the instant case reflects appellant's understanding of the consequences of his plea if he was not sentenced under the guidelines. Nothing in this record, however, reflects appellant's understanding of the possible consequences of his affirmative election to be sentenced under the guidelines, i.e., the possibility of a sentence imposed in excess of the recommended guidelines range and the fact that under the guidelines there is no parole.
Appellant contends that this guidelines ineligibility for parole is a violation of the ex post facto clauses of the federal and the Florida Constitutions when it is applied to persons whose offenses were committed prior to the effective date of the guidelines. For a law to be ex post facto in its operation it must be an enactment which makes "criminal an action that was not so at the time it was performed, or which increases the punishment; in short, one which, in relation to the offense or its consequences, alters the situation of a party to his disadvantage." (emphasis supplied) 14 Fla. Jur.2d, Criminal Law § 11 (1979). In Weaver v. Graham, 450 U.S. 24, 29, 31, 101 S.Ct. 960, 964, 965, 67 L.Ed.2d 17, 23, 24 (1981), the Court said one of the elements that establishes the ex post facto nature of a law is that "it must disadvantage the offender affected by it." In other words, "[t]he critical question is whether the law changes the legal consequences of acts completed before its effective date." Thus, if a law "substantially alters the consequences attached to a crime already completed and therefore changes `the quantum of punishment' ... it can be constitutionally applied to [appellant] only if it is not to his detriment." In State v. Williams, 397 So.2d 663, 665 (Fla. 1981), the Florida Supreme Court phrased the two-part Weaver test thusly: "(1) does the law attach legal consequences to crimes committed before the law took effect, and (2) does the law affect the prisoners who committed those crimes in a disadvantageous fashion?" The court went on to note that if both questions could be answered affirmatively, "then the law constitutes an ex post facto law and is void as applied to those prisoners." Id.
Application of the Weaver test to this defendant who received a life sentence establishes that both prongs have been met. First, Florida Rule of Criminal Procedure 3.701(b)(5) attaches the legal consequence of ineligibility for parole, which consequence was not in effect at the time of appellant's offense. Second, a sentence of life under the guidelines translates to imprisonment for a period of natural life, precisely because there is no parole under the guidelines. Appellant was not sentenced under a life felony statute, therefore there is no statutory provision which converts his life sentence to a term of years. See § 775.082(3)(a), Fla. Stat. (1983). Here, a life sentence under the guidelines means natural life, with an act of clemency pursuant to § 944.30, Fla. Stat. (1983), as the only possibility of release. Thus, the law clearly impacts on appellant in a disadvantageous fashion.
Appellant herein is in a posture far worse than that described in Knight v. State, 455 So.2d 457 (Fla. 1st DCA 1984), i.e., of a person who if not sentenced under the guidelines may be sentenced for a longer term initially, but "will be eligible for parole and may in fact receive an earlier release date than if sentenced under the guidelines." In an analogous situation, the Florida Supreme Court, reviewing a First District Court of Appeal case, noted that retention of jurisdiction by the trial court of one-third of a 140 year sentence rendered appellant ineligible for parole for 47 years, when without retention of jurisdiction appellant would be eligible for parole *897 in a significantly shorter period of time. State v. Green, 421 So.2d 508 (Fla. 1982). Clearly, this appellant's life sentence with no eligibility for parole imposed under the sentencing guidelines is a harsher penalty than a life sentence under the old sentencing system, since the old system does provide for parole consideration, even for those persons sentenced to a life term.
The state does not argue that appellant understood, prior to his election to be sentenced under the guidelines, the possible sentence he could receive, or that he would not be eligible for parole. Rather, the state contends since appellant affirmatively selected to be sentenced under the guidelines, his situation is distinguishable from that of defendants in State v. Green, supra, and State v. Williams, 397 So.2d 663 (Fla. 1981). In Moore v. State, 455 So.2d 535 (Fla. 1st DCA 1984) this court rejected a similar argument that the no-parole provision of the sentencing guidelines was an impermissible ex post facto application of the law when applied to offenses committed before the October 1, 1983, effective date of the sentencing guidelines. Moore, however, is distinguishable from this case. In Moore the defendant's ineligibility for parole simply meant that the defendant would serve a determinable legal sentence, reduced only by accumulated gain time, while the no-parole provision applied to this appellant means he will be incarcerated for a term of natural life. In this situation, the trial court's credit for 412 days jail time not only has no relevance to the sentence, but raises the question whether the trial judge intended to sentence under the law in effect at the time of the offense or under the sentencing guidelines.
NOTES
[1] The Waiver and Plea form executed by appellant consists of a typed form with blank spaces provided so that the specific charges along with the minimum mandatory penalties may be inserted. The form executed by appellant is reproduced in part here:

4. I understand that the maximum penalty in this case could be Life[*] years imprisonment and/or $ ____ fine, or both, and that the minimum mandatory penalty, if any, in this case is Three years imprisonment.
[*] If not sentenced under Sentencing Guidelines eff. 10-1-83.
The underlined words and the phrase designated by an asterisk were hand printed in the original document.
[2] This statement was made at the sentencing hearing and transcribed by the court reporter. The record contains no written statement prepared by the trial court delineating the reasons for departure, as required by Florida Rules of Criminal Procedure 3.701(d)(11).
[3] See Ex. Post Facto Limitations on Legislative Power, 73 Mich.L.Rev. 1491, 1509 n. 68 (1975).
[4] Id. at 1496-1501.
[5] Kadish, Legal Norm and Discretion in the Police and Sentencing Processes, 75 Harv.L.Rev. 904, 923 (1962).
[6] 73 Mich.L.Rev. at 1502, n. 39.
[7] There are indications in the legislative history of chapter 83-87, Laws of Florida, that the Florida Legislature intended by its enactment to eliminate the possibility of parole for all crimes committed after October 1, 1983. See the 1983 Journal of the Senate, pp. 445-446 and the 1983 Journal of the House of Representatives, p. 781, as well as § 921.001(8), Florida Statutes (1983).