618 So.2d 271 (1993)
Gary DOLAN, Appellant,
v.
STATE of Florida, Appellee.
No. 92-03491.
District Court of Appeal of Florida, Second District.
March 31, 1993.
Rehearing Denied May 26, 1993.
Gary Dolan, pro se.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Ron Napolitano, Asst. Atty. Gen., Tampa, for appellee.
*272 Kurt E. Ahrendt, Asst. Gen. Counsel, Tallahassee, for amicus curiae FL Parole Com'n.
PER CURIAM.
Gary Dolan appeals the summary denial of his motion for postconviction relief. We affirm in part and reverse in part.
Numerous issues are raised in the motion, but only one merits extended comment. Dolan entered a plea of guilty to several felony charges. He now seeks to withdraw that plea, claiming it was made without a full understanding of the consequences and that it was influenced by the belief he would be eligible for parole.
Apparently one or more plea bargains were discussed in the months preceding Dolan's plea, but all were rescinded and Dolan finally entered an "open plea." The parties were aware that Dolan's extensive prior record and the seriousness of the charges resulted in a recommended sentence of life under sentencing guidelines. Defense counsel informed the court he would argue in support of a downward departure sentence. However, Dolan acknowledged there was no binding agreement as to the length of sentence, and the court cautioned Dolan that he could receive "a lifetime incarceration in the Department of Corrections."
Following the plea colloquy the trial court inquired about the possibility of parole if Dolan were sentenced to life. This may have been prompted by concern that Dolan, despite many aggravating circumstances surrounding his case, deserved some consideration for having provided assistance in other criminal prosecutions. Defense counsel responded that prior to the adoption of sentencing guidelines, one might expect parole after ten years if a life prisoner "caused no trouble," but under guidelines "he's not eligible for parole." That is, "life means life." However, counsel went on to state that such a prediction was "[not] realistic" because such a sentence was worse than a capital life sentence. The court agreed that "[l]ife under the guidelines presumably meant life," but thought "some sort of parole release date" might nevertheless exist. The court described a case wherein another judge had imposed a 99-year sentence so that the defendant could receive gain time; ironically, that defendant complained and demanded a life sentence. "I felt he must have learned something in the jail system that gave him hope that under a guideline sentence of life he'd get out sooner." Eventually the court did impose a life sentence, but expressed its belief Dolan would be eligible for parole.
In fact, the speculation by counsel and the trial court appears to have been incorrect. In his lucid and informative amicus curiae brief, counsel for the Florida Parole Commission has explored the significance of a life sentence under guidelines. For anyone convicted of a non-capital felony committed on or after October 1, 1983, the term "parole" no longer exists. See § 921.001(8), Fla. Stat. (1983). Capital felons are still parole-eligible as they are not sentenced under section 921.001. Gresham v. State, 506 So.2d 41 (Fla. 2d DCA 1987).
At first blush, it may seem an anomaly that the most serious type of offender  the capital felon  would be eligible for early release on parole, whereas those committing less serious life felonies, or even first degree felonies, are subject to `true life sentences' without eligibility for parole. However, the sentencing guidelines factor in more than just the seriousness of the crime. The defendant's prior criminal record, additional offenses at conviction, and legal status at the time of offense determine the sentence imposed under the sentencing guidelines. If an inmate's criminal record is so bad as to score life under the sentencing guidelines, the argument can be made that he probably deserves a true life sentence.
Brief of amicus curiae, 6-7.
However, in 1990 the Florida Parole Commission implemented the "Control Release Program," which is governed by section 947.146, Florida Statutes (1991). Section 921.001(1) was amended to recognize control release as one of the few authorized opportunities of early release for a *273 prisoner sentenced under guidelines. The purpose of the control release program, which is directed solely to inmates who are not eligible for parole, is to alleviate prison overcrowding.
Not all guideline-sentence prisoners can be considered for control release; the statute excludes, among others, those serving minimum mandatory sentences, sex offenders, habitual felony offenders, and those convicted of certain violent felonies. Dolan, by virtue of a conviction for attempted second degree murder, appears to be ineligible. Section 947.146(4)(i). That is, for the time being and discounting truly exceptional developments such as executive clemency, Dolan may reasonably expect to pass out his days in the custody of the Department of Corrections. However, as noted by counsel for the Commission, such provisions "are, of course, subject to legislative amendment, and may be expanded or restricted in the future."[1]
The voluntariness of Dolan's plea is not undermined simply by the fact neither defense counsel nor the judge was absolutely certain whether Dolan would be eligible for parole.
Neither the trial court nor counsel is required to forewarn a defendant about every conceivable collateral consequence of a plea to criminal charges. Blackshear v. State, 455 So.2d 555 (Fla. 1st DCA 1984)... . [W]hen most felony prisoners were eligible for release on parole, there was no requirement that a defendant be warned about parole eligibility, because parole was viewed as a matter of legislative and executive grace rather than a direct consequence of a plea. Trujillo v. United States, 377 F.2d 266 (5th Cir.), cert. denied, 389 U.S. 899 [88 S.Ct. 224, 19 L.Ed.2d 221] (1967). Early cases decided under Florida's current system of `truth in sentencing,' in which there is no parole, found no duty to warn a defendant that opting for a guideline sentence foreclosed parole eligibility. Glover v. State, 474 So.2d 886 (Fla. 1st DCA 1985).
Simmons v. State, 611 So.2d 1250 (Fla. 2d DCA 1992). However, as pointed out in Simmons, it is reasonable to expect that a defendant "contemplating a plea to serious criminal charges naturally will be expected to inquire about the extent of possible punishment [and] relies upon counsel to estimate the length of sentence." Absent a specific plea offer, "counsel's predictions can be no more than an `educated guess' [although] it can be expected that the `flat-time' sentence ultimately imposed by the court will be further reduced to some extent by gain-time." It is when counsel or some other party "promises a certain favorable result  particularly one who does so to convince the client that a `maximum' sentence is shorter than it appears" that potential trouble arises. If collateral matters such as parole are discussed, and counsel's advice is measurably deficient, the result could be ineffective assistance and/or an involuntary plea.
Dolan's motion is not enhanced by the inclusion of allegations that are palpably false. For example, at one point he states he "was never told he would receive a life sentence," a claim so thoroughly discredited by the plea colloquy as to cast doubt upon Dolan's veracity generally. The record also depicts Dolan as someone of above-average intelligence and considerable knowledge of the criminal justice system, who freely participated in the important courtroom conferences. Nevertheless, we must conclude that the motion sets forth a prima facie showing that the plea was influenced by unfulfillable promises, and further, that the record does not conclusively refute this allegation. Though the courtroom discussions about parole seem to us to have been appropriately cautious, they were also, as noted, erroneous. Moreover, the transcript contains no explicit discussions with Dolan personally about his understanding of the parole question.[2] Accordingly, we must remand this case for further proceedings regarding this one issue. *274 The order denying postconviction relief is affirmed in all other respects.
It appears to us highly likely that an evidentiary hearing will be necessary after remand. Accordingly, we think it advisable to elaborate upon the proof requirements before relief may be considered. Of course, the burden will be on Dolan to establish that his plea was tainted by promises of parole eligibility. It is not enough that Dolan entertained hopes of parole release, nor would Dolan be entitled to relief if counsel clearly cautioned him that parole was only a possibility that could not be guaranteed. Instead, Dolan must convince the trier of fact that counsel, or some other party whose advice he reasonably followed, explicitly promised he would someday be considered for parole. Alternatively, Dolan must demonstrate that he erroneously understood a statement about parole to be an explicit promise, and that his misunderstanding was reasonable and excusable under the circumstances in which it arose.
Affirmed in part, reversed in part, and remanded with instructions.
SCHOONOVER, A.C.J., and FRANK and THREADGILL, JJ., concur.
NOTES
[1] These observations are not intended to prompt future speculation, and inevitable litigation, about what a certain sentence "really" means.
[2] We do not mean to suggest that such an inquiry must be conducted in all cases. To so hold would place us in conflict with our prior decision in Simmons. We do believe, however, that it would have been preferable under the peculiar facts of this case to have ascertained the extent of Dolan's understanding about parole.