689 So.2d 1107 (1997)
John Allen TURNER, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 97-00120.
District Court of Appeal of Florida, Second District.
February 12, 1997.
*1108 LAZZARA, Judge.
The appellant, John Allen Turner, Jr., seeks our review of the trial court's summary denial of his motion filed pursuant to Florida Rule of Criminal Procedure 3.850 in which part of the relief he sought was to withdraw his pleas of nolo contendere and to proceed to trial. Because we conclude that the record conclusively establishes that his pleas were the product of a court-induced plea offer which cannot be legally fulfilled, we reverse and remand with directions that he be allowed to withdraw his pleas.
The appellant pleaded nolo contendere to two third-degree felony offenses and one first-degree misdemeanor offense which he committed on October 9, 1995. The trial court imposed two concurrent sentences of thirty months as to the felonies and time-served as to the misdemeanor. It also directed that these sentences were to be served concurrently and coterminously with another thirty-month sentence previously imposed on the appellant for a violation of community control in an unrelated case in which the offense occurred on February 7, 1995. The appellant did not take a direct appeal from his judgments and sentences.
Four months after his sentencing, however, the appellant moved the trial court to set aside his pleas under rule 3.850. One of his complaints was that prior to the pleas he was led to believe that the new sentences would terminate at the conclusion of the earlier sentence. He alleged that contrary to this representation, the Department of Corrections had advised him that in accord with section 944.275(4)(b)3., Florida Statutes (1995), he must serve eighty-five percent of his new sentences so that those sentences will not terminate at the expiration of the previously imposed sentence. Based on this turn of events, the appellant claimed that his pleas were unlawfully induced and involuntarily made without a full understanding of the consequences of his pleas.
The trial court summarily denied the motion and attached a copy of the appellant's plea colloquy in support of its conclusion that the appellant was entitled to no relief. Its primary basis for denying the motion was that the transcript refuted one of the appellant's allegations that the plea agreement contemplated that the appellant would serve no more than fourteen to sixteen months of his new sentences. The trial court further determined that because the "85 percent *1109 rule" was discussed during the plea proceedings, the appellant was aware that it would apply to these sentences.
We begin our resolution of this case with an examination of section 944.275(4)(b)3., which is the critical underpinning of the appellant's claim for relief. The legislature amended this statutory provision in 1995, with an effective date of October 1, 1995, in an act designated the "Stop Turning Out Prisoners Act." Ch. 95-294, §§ 1, 2, and 5, at 2717-2718, Laws of Fla. In doing so, it added language curtailing the Department of Corrections' discretion to award incentive gain-time to prisoners serving "sentences imposed for offenses committed on or after October 1, 1995," by clearly mandating that for such a sentence "no prisoner is eligible to earn any type of gain-time in an amount that would cause a sentence to expire, end, or terminate, or that would result in a prisoner's release, prior to serving a minimum of 85 percent of the sentence imposed." The legislature further directed that for such a sentence, "a prisoner shall not accumulate further gain-time awards at any point when the tentative release date is the same as that date at which the prisoner will have served 85 percent of the sentence imposed."
It is obvious that the legislature's intent, as embodied in this statutory provision, is to stop the early release of prisoners because of the awarding of gain-time credits by requiring that such prisoners serve a minimum of eighty-five percent of sentences imposed for offenses committed on or after October 1, 1995. It is also clear that the Department of Corrections must apply this provision to the appellant's new sentences because they are based on offenses committed on October 9, 1995, but cannot apply it to his earlier sentence because the offense in that case was committed prior to October 1, 1995. See Gwong v. Singletary, 683 So.2d 109, 111 n. 2 (Fla.1996).
Against this legislative backdrop, we turn to a review of the plea transcript attached to the trial court's order. In doing so, we conclude that this record, rather than refuting appellant's claim, conclusively supports it. It reflects that prior to the plea, the following colloquy took place between the trial court, appellant's trial counsel, the appellant, and an assistant state attorney regarding the parameters of a plea offer made by the trial court:
THE COURT: Mr. Turner, you understand that the offer that was made by the Court this morning was a 30-month concurrent sentence to the one you already have? In other words, the sentences would be run at the same time, you wouldn't have any additional time. Do you understand what the offer is?
APPELLANT'S COUNSEL: Objection to that, Your Honor. I have advised my client that the new offenses under the new '95 guidelines which means he must serve 85% of that sentence, but the new [sic] sentence is under the '94 guidelines and he could those two sentences will most likely not end at the same time. I did advise him that.

THE COURT: What does the State say on that point?
ASSISTANT STATE ATTORNEY: I do not believe that every crime categorized is doing 85 percent.
THE COURT: How about if we made it concurrent and coterminous with the other one?

ASSISTANT STATE ATTORNEY: I'm sure you can do that.

APPELLANT'S COUNSEL: If I could advise, my calculations and I believe, in fact, the legislature mandates 85%. I can show you the legislation. 24-month sentence would, in fact, result in the same time, assuming that he received the maximum incentive on the 30 months. If he doesn't receive the maximum incentive, then he is going to do the total or whatever is required of the 30 months under the new guidelines.
THE COURT: Mr. Turner, what the offer is is 30 months which is concurrent and coterminous, which means it runs at the same time and ends at the same time as your other sentence. That's the offer. Now, where do you stand on that?
APPELLANT: My feeling ismy feeling is if it would terminate at the same time as my 30-month sentence you gave me *1110 previously, then I'm willing to work with the Court.

APPELLANT'S COUNSEL: He understands that he's not going to risk going to trial if he's not going to do any more time than what he is already sentenced to.

THE COURT: I think I just solved that problem. Why don't you write it up? It's concurrent and coterminous, so it would end at the same time that the other one ends, okay? Write that up and sit over to one side.

(Emphasis added.)
Following a short recess, the appellant appeared with his trial counsel before the trial court for a change of plea. Immediately prior to the pleas, as the record reflects, the following discussion took place between appellant's trial counsel and the trial court:
APPELLANT'S COUNSEL: We have discussed the form, Your Honor, and specifically we did discuss the concepts that the sentence you imposed would be ending at the same time as the sentence in 95-2370, that's the community control case that you previously sentenced him to 30 months. And we have gone over, I think, the issues in the plea agreement.
THE COURT: Very well. Okay.
(Emphasis added.)
The trial court was then presented with a written plea form, which is also part of this record, executed by the appellant. It provided, in conformity with the trial court's direction to "[w]rite that up," that by entering his pleas the appellant had an understanding that the new sentences would "end at the same time" as the previously imposed sentence. During the taking of the plea, the trial court had the appellant acknowledge under oath that nothing else had been promised or represented to him other than what was contained in the plea agreement or what had been discussed in court. After accepting the pleas, the trial court orally pronounced that the sentences imposed were to be concurrent and coterminous with the earlier sentence. It later entered a written judgment in conformity with its oral pronouncement.
It is evident from this record that even though there was no specific agreement as to how much time the appellant would have to serve on his new sentences and even though he was made aware of the "85 percent rule," nevertheless, there was a specific representation made by the trial court in its plea offer that the new sentences would terminate at the conclusion of the previously imposed sentence. Furthermore, it is crystal clear that the trial court's offer to make the new sentences coterminous with the first sentence, made with the concurrence of the state, was in direct response to appellant's counsel's imminently correct advice regarding the impact of the "85 percent rule" embodied in section 944.275(4)(b)3., and was an attempt to "solve that problem" by leading the appellant to believe that this rule, under the offer made, would not apply to his new sentences. Given these circumstances, it would be illogical to conclude that because the appellant was made aware of the "85 percent rule," he cannot now complain that he was misled as to its application to his new sentences.
In view of this record, we have no other alternative but to conclude that appellant's pleas were the product of a mistaken assumption, induced by the trial court with the agreement of the state, that his new sentences would terminate at the conclusion of his earlier sentence. As noted, however, section 944.275(4)(b)3. made such an assumption not just a mistake but a legal impossibility. Thus, because the appellant "did not receive the sentence for which he originally bargained and was not informed of the impossibility of carrying out that sentence, the interests of justice mandate that he be given an opportunity to withdraw his plea[s]." Richardson v. State, 432 So.2d 750, 751 (Fla. 2d DCA 1983). Accord Ramos v. State, 513 So.2d 1097 (Fla. 2d DCA 1987).[1]
Before closing, we take this opportunity to caution trial courts against making specific representations to defendants regarding *1111 when their sentences will terminate in order to induce a plea, especially when the representation is tied to the ever-changing vagaries of gain-time statutes. As we have recognized in a different context, "an attorney who promises a certain favorable resultparticularly one who does so to convince the client that a `maximum' sentence is shorter than it appearsoperates at the risk he or she later will be accused of ineffectiveness." Simmons v. State, 611 So.2d 1250, 1253 (Fla. 2d DCA 1992). Similarly, as in this case, a trial court that makes the same type of promise to a pleading defendant runs the risk of inevitable reversal should the promise later prove impossible to perform.
We strongly urge, therefore, that if the subject of statutory gain-time happens to become the focus of discussion, either prior to a plea or during the course of a plea, that a trial court insures that the defendant realizes that no promises can be made regarding the defendant's eligibility for such gain-time under the sentence to be imposed. In our view, such an approach would obviate what occurred in this case.[2] We also reiterate that, although not required, it would be beneficial during a plea dialogue "to have the defendant affirm under oath that no one ... has made any promises concerning eligibility for any form of early release authorized by law and the actual amount of time to be served under the sentence to be imposed." Carmichael v. State, 631 So.2d 346, 347 (Fla. 2d DCA 1994) (quoted with approval in State v. Leroux, 689 So.2d 235, 237 (Fla.1996)).
Accordingly, for the reasons expressed, we reverse the trial court's order denying the appellant's motion for postconviction relief and remand this cause to the trial court with directions to allow appellant to withdraw his pleas and to proceed to trial if he desires to do so after being properly advised of his alternatives. We specifically advise the appellant, in that regard, that should he elect to withdraw his pleas and proceed to trial, "`such a move would return him to the status quo ante, whereby he would face' any appropriate sentence authorized by law should he subsequently be convicted." Carmichael, 631 So.2d at 348 (Fla. 2d DCA 1994) (quoting Colon v. State, 586 So.2d 1305, 1306 (Fla. 2d DCA 1991)).
Reversed and remanded with directions.
FRANK, A.C.J., and ALTENBERND, J., concur.
NOTES
[1] Because the record conclusively establishes that the appellant's pleas were tainted by the trial court's explicit representation that the new sentences would in fact terminate at the same time as the previously imposed sentence, there is no need to remand for an evidentiary hearing. Cf. Dolan v. State, 618 So.2d 271, 274 (Fla. 2d DCA), review denied, 626 So.2d 204 (Fla.1993).
[2] We note that although we have acknowledged that gain-time should not be ignored at the trial level, we have specifically held that a trial court is not required to warn a defendant during the plea colloquy of the collateral consequences of the application of gain-time statutes to the sentence to be imposed. Simmons, 611 So.2d at 1252-1253.