820 So.2d 901 (2002)
Chad A. YOUNG, Petitioner,
v.
Michael W. MOORE, etc., et al., Respondents.
No. SC00-1106.
Supreme Court of Florida.
May 30, 2002.
Stephen K. Johnson, Gainesville, FL, for Petitioner.
Carolyn J. Mosley, Assistant General Counsel, Department of Corrections, Tallahassee, FL, for Respondents.
PER CURIAM.
Chad A. Young petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(9), Fla. Const. For the reasons set forth below, we deny the petition.
Young is serving a prison sentence for a first-degree felony violation of section 817.034(4)(a)1, Florida Statutes (1995), the Florida Communications Fraud Act (FCFA). The relevant facts leading to Young's incarceration are as follows. Between January 1991 and July 1996, Young engaged in a criminal scheme to defraud his grandparents, Clarence and Lucy Young, age 80 and 72 respectively, of approximately $80,000 by claiming he needed money to pay gambling debts. Young claimed that he had been beaten and cut numerous times by the persons to whom he owed money, and that he would be *902 killed if he failed to pay the debts. To help Young out, the grandparents mortgaged their home, depleted their life savings, and borrowed $35,000. On June 28, 1996, Young made an additional request from the grandparents for $7000 to pay off his alleged kidnappers, and even followed this request with a phone call to his grandparents stating, in a disguised voice, "If we don't get the money, the kid's dead." After the grandparents requested assistance from law enforcement, Young was apprehended on July 3, 1996, while trying to collect the money from the grandparents. Young admitted to police that, contrary to his representations to his grandparents, he owed no one any money, he had never been kidnapped, beaten, or cut, and he was, in fact, the voice of the "kidnapper" who telephoned his grandparents seeking to extort money.
In January 1997, Young pled guilty to first-degree scheme to defraud in violation of section 817.034(4)(a)1, Florida Statutes (1995) and, in April 1997, was sentenced to two years on community control. However, in February 1998, Young was adjudicated guilty of violating community control and, pursuant to section 921.001(4)(b)3, Florida Statutes (1997), the court resentenced Young under the 1991 guidelines to five and a half years in prison.[1] Young was placed in the custody of the Department of Corrections ("Department") on April 27, 1998. Subsequent to Young's incarceration, the Department has applied the gain time provisions of section 944.275(4)(b)3, Florida Statutes (1997), which permits Young to accumulate up to 10 days per month incentive gain time and requires him to serve a minimum of 85% of his sentence incarcerated.[2] Accordingly, Young's tentative release date is August 17, 2002.
Young contends that the Department is precluded in this instance from imposing a gain time calculation based on a gain time statute from a year different than that used for sentencing.[3] We disagree. The plain meaning of the statute governing Young's gain time calculation specifically directs the Department to calculate Young's gain time as of the date the crime was committed:
For sentences imposed for offenses committed on or after October 1, 1995, the department may grant up to 10 days per month of incentive gain-time, except that no prisoner is eligible to earn any type of gain-time in an amount that would cause a sentence to expire, end, or terminate, or that would result in a prisoner's release, prior to serving a minimum of 85 percent of the sentence imposed.
§ 944.275(4)(b)3, Fla. Stat. (1997) (emphasis added). Moreover, because a scheme to defraud in violation of section 817.034(4)(a)1 is a true continuing offense, we find that Young's crime was "committed" *903 in 1996.[4] Therefore, section 944.275(4)(b)3 is clearly applicable to Young, and it cannot be said that the Department did anything other than correctly implement the law that existed at the time of Young's incarceration:
The legislature amended ... [section 944.274(4)(b)3] in 1995, with an effective date of October 1, 1995, in an act designated the "Stop Turning Out Prisoners Act." In doing so, it added language curtailing the Department of Corrections' discretion to award incentive gain-time to prisoners serving "sentences imposed for offenses committed on or after October 1, 1995" .... It is obvious that the legislature's intent, as embodied in this statutory provision, is to stop the early release of prisoners because of the awarding of gain-time credits by requiring that such prisoners serve a minimum of eighty-five percent of sentences imposed for offenses committed on or after October 1, 1995.
Turner v. State, 689 So.2d 1107, 1109 (Fla. 2d DCA 1997)
Young's claim that the Department's application of the reduced gain time statute is violative of the Ex Post Facto Clause of the Constitution is also without merit. This Court has stated, "[T]he Ex Post Facto Clause is triggered when a law `increases punishment beyond what was prescribed when the crime was consummated.'" Thomas v. Moore, 748 So.2d 1010, 1011 (Fla.1999) (emphasis in original) (quoting Lynce v. Mathis, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997)). For example, in Gwong v. Singletary, 683 So.2d 109 (Fla.1996), we held that an administrative regulation reducing the eligibility of certain inmates to earn incentive gain time credits applied to a class of inmates who committed their offenses before the effective date of the regulation and, therefore, unconstitutionally acted to enhance the nature of punishment. In this case, however, Young consummated his crime in 1996, nearly ten months after the effective date of the statute reducing gain time.[5] Because the gain time statute at issue here was in effect when Young "consummated" his offense, there is no unconstitutional retroactive application of this statute to him. See Thomas, 748 So.2d at 1011-12.[6]
*904 While it is true that eligibility for reduced imprisonment through eligible gain time is a significant factor entering into the defendant's decision to plea bargain, the statute reducing gain time in this case had taken effect in October 1995 and Young did not enter his plea until January 22, 1997, nearly one and a half years later. Moreover, Young was not sentenced to prison until February 1998 (after he violated his probation for possession of forged bank bills), nearly two and a half years after the statute reducing gain time had taken effect. Although reduced imprisonment through gain time is arguably a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence imposed, in this instance, the statute reducing gain time was in effect at the time of Young's plea and at the time of Young's sentencing. Therefore, it cannot be said that the likelihood of receiving reduced gain time could not have been considered by Young when he entered his plea.
Finally, Young claims that the Department's action here frustrates the Legislature's intent to "maintain continuity" between the sentencing guidelines and gain time statutes. No one questions that the guidelines and gain time have been a consideration in sentencing since the guidelines were established in 1982. See ch. 82-145, § 1, Laws of Fla. Indeed, section 921.001(10)(a)2 indicates that a person may be released from incarceration upon expiration of the person's sentence as reduced by the person's accumulated gain time. However, there is nothing from the language of section 921.001 that precludes the Department from imposing a gain time calculation based on a gain time statute from a year other than the year used by the trial judge for sentencing. Indeed, no statute or court opinion has stated that the respective dates of the sentencing law and gain time law imposed in a particular case must be the same. To suggest that their coexistence means they must go hand in hand for that purpose is a fiction supported by no authority whatsoever.
In this instance, the trial court and the Department, in particular, did nothing more than follow the law. That is, the trial court followed the statute which required that it impose a sentence based on the sentencing guidelines in effect at the beginning date of the offense, i.e., 1991. In turn, the Department calculated Young's gain time based on the gain time statute that was in effect at the time Young's offense was consummated, i.e., 1996. There was no retroactive cancellation of gain time creditsnor did Young have any expectation of higher gain time when he consummated his crime nearly ten months after the reduced gain time statute had taken effect. In sum, Young has advanced no legal basis for concluding that the Department is restricted from imposing a gain time statute from a year different from that used for sentencing. Accordingly, the petition is hereby denied.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, PARIENTE, LEWIS, and QUINCE, JJ., concur.
ANSTEAD, J., dissents with an opinion.
ANSTEAD, J., dissenting.
While I agree that under section 921.011(4)(3), Florida Statutes (2001), the petitioner's offense may technically be considered as a continuing offense and as having been committed in 1996, I disagree with the majority's conclusion that the government may rely on one version of the *905 sentencing law during sentencing, but then apply another more onerous version of the law when determining how many years the inmate must actually spend incarcerated. Further, while I am in full agreement with such "truth-in-sentencing" laws such as the Stop Turning Out Prisoners Act, I believe that it is necessary to be both truthful and consistent in sentencing.
To be sure, in similar circumstances, the United States Supreme Court has consistently rejected the use of technical "niceties" to justify a variation between the sentence imposed by the court and the subsequent computation of the actual time to be served by a defendant. For example, in Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), a decision discussing Florida's gain time provisions, the Supreme Court rejected the government's reliance on technical distinctions between a sentence and the impact of gain time:
To the extent that respondents' argument rests on the notion that overcrowding gain-time is not "in some technical sense part of the sentence," Weaver,[[7]] 450 U.S. at 32, 101 S.Ct. 960, this argument is foreclosed by our precedents. As we recognized in Weaver, ... such credits are "one determinant of petitioner's prison term ... and ... [the petitioner's] effective sentence is altered once this determinant is changed." Ibid. We explained in Weaver that the removal of such provisions can constitute an increase in punishment, because a "prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." Ibid.

Lynce, 519 U.S. at 445-46, 117 S.Ct. 891.[8] Since the 1995 version of the gain time statutes was in effect when Young's criminal offense occurred, the majority concludes that there is no ex post facto violation. However, it seems quite clear that the concepts set forth by the Supreme Court in Lynce and Weaver lend themselves equally well to a due process analysis. Regardless of how the majority may feel about the culpability of Young's crimes against his grandparents, changing the way the actual sentence would be calculated long after Young entered his plea and even months after the Department had begun calculating Young's gain time based on the 1991 statutes would appear to be patently unlawful under the Supreme Court's jurisprudence. See Lynce, 519 U.S. at 445 46, 117 S.Ct. 891; Weaver, 450 U.S. at 966, 101 S.Ct. 960: see also Moore v. Pearson, 789 So.2d 316 (Fla.2001) (allowing inmate benefit of bargain of coterminous sentences despite the fact that one of his crimes had been committed after the 85% statute went into effect); see also State v. Leroux, 689 So.2d 235, 237 (Fla. 1996) (stating that gain time "advice is a legitimate and essential part of the lawyer's professional responsibility to his client in most plea negotiations, where often the bottom line for the defendant is the amount of time he will serve").
All persons who are charged with a crime have a right to know what their true punishment will be should they be convicted or accept a plea bargain. It seems clear that Young understood that he would *906 not be subjected to the 85% service provision of the 1995 statute and, in fact, he was not initially subjected to it.[9] Further, after the 1997 internal audit which caused the Department to reduce Young's gain time calculation, he petitioned the sentencing court to clarify which version of the statutes the court had used in imposing Young's sentence. The trial court, after reviewing its records, confirmed Young's belief that when he pled guilty the understanding was that his time in prison would be controlled by the 1991 statutes.[10] Examining this case from that viewpoint, the sentencing colloquy makes clear that all concerned believed that Young's "punishment" would be determined from the 1991 statutes. Nowhere is there any indication that Young was informed that while his original sentence would be determined by the 1991 statutes, the actual amount of time he had to spend in prison would be determined by the 1995 statutes. Since the government charged Young under the 1991 statutes,[11] Young pled under the 1991 statutes,[12] the trial court sentenced him under the 1991 statutes,[13] and even clarified in 1998 that it meant to sentence Young under the 1991 statutes,[14] the 1991 statutes should apply to the calculation of Young's gain time as well.
Finally, as this Court has noted in Gomez v. Singletary, 733 So.2d 499, 500 (Fla. 1998), the calculation of gain time can be immensely difficult even under one version of a statute. Inmates often come into the prison system with sentences from different years and each sentence must be separately calculated. Prosecutors, defense attorneys, and judges must be able to give defendants some idea of the length of incarceration they may be facing or negotiated plea bargains may be subject to subsequent challenge as involuntary. By now interjecting an additional variable into the calculation, the calculation of release dates will be nearly impossible to ascertain at sentencing and thus, the goal of ensuring "truth-in-sentencing" will have been completely frustrated.
NOTES
[1] Section 921.001(4)(b)3 requires:

Felonies, except capital felonies, with continuing dates of enterprise shall be sentenced under the sentencing guidelines in effect on the beginning date of the criminal activity.
§ 921.001(4)(b)3, Fla. Stat. (1997). In accordance with this statute, and because Young began his criminal activity in 1991, the trial court correctly imposed a sentence based on the 1991 guidelines.
[2] Section 944.275(4)(b)3 became effective October 1, 1995. See ch. 95-294, § 2, Laws of Fla. (Stop Turning Out Prisoners Act).
[3] Specifically, Young contends that, under the gain time law that existed in 1991, i.e., § 944.275(4)(a)-(b), Fla. Stat. (1991), he would be entitled to basic gain time at the rate of 10 days per month and incentive gain time at the rate of 20 days per month, and he would not be required to serve 85% of his sentence.
[4] We make this determination because we hold, as did the Fourth District in Rosen v. State, 757 So.2d 1236, 1238 (Fla. 4th DCA 2000), that the crime of scheme to defraud/organized fraud in violation of section 817.034(4)(a)1 is actually a true continuing offense under Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). The language of that criminal statute describes the offense as a "systematic ongoing course of conduct" and thus, this explicit language satisfies the Toussie requirement that the statute describe the nature of the crime such that it is clear that the Legislature intended that it be treated as a continuing one. See Toussie, 397 U.S. at 115, 90 S.Ct. 858. Young's last overt acts committed in furtherance of the scheme to defraud his grandparents were committed in July 1996; therefore, that date should be considered the date the offense was finally consummated or committed.
[5] Indeed, the record indicates that Young sought to defraud his grandparents of an additional $7000 on June 28, 1996 nearly ten months after the reduced gain time statute had taken effect.
[6] Moreover, this case is unlike those cases where retroactive cancellation of gain time credits has been found to violate ex post facto because inmates had been in prison accruing gain time credits when the law reducing (or eliminating) gain time credits went into effect. See Lynce, 519 U.S. at 446, 117 S.Ct. 891 (holding statute which retroactively cancels gain time earned by inmate violates Ex Post Facto Clause); Calamia v. Singletary, 694 So.2d 733 (Fla.1997) (reinstating petitioner's gain time in accordance with the opinion in Lynce.) In this case, and unlike those previously cited, Young had not been in prison accruing release credits at the time the new gain time law went into effect. On the contrary, Young was still out perpetrating organized fraud.
[7] See Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).
[8] While Lynce specifically dealt with early release or prison overcrowding gain time, the other case cited in the above quotation (Weaver), specifically dealt with "regular" or incentive and basic gain time. Further, the Court made a point in Lynce of dispelling the notion that there was any difference between overcrowding gain time and regular gain time for purposes of its analysis.
[9] See Sentencing Guidelines Scoresheet, Appendix to Respondent Moore's Court-Ordered Response at 16; see also Petition for Writ of Habeas Corpus at 4; Affidavit, respondent's appendix at 3, n. 1.
[10] See Order Granting Motion to Correct Scrivenor's Error, Exhibit B to petitioner's reply.
[11] Upon inquiry from the judge in the trial proceedings ("I have this as a 1996 case"), the government informed the judge that "the earliest date of offense is '91. I alleged a five-year time span from 91 to 1996, and under the Florida Statute 921, you will use the earliest date of offense." See Transcript of Proceedings, Exhibit A to petitioner's reply.
[12] See Sentencing Guidelines Scoresheet, respondent's appendix at 16.
[13] Id.
[14] See supra note 4.